864 So.2d 181 (2004)
Dustin PEPPER
v.
Thomas Seth TRIPLET and Allstate Insurance Company.
No. 2003-C-0619.
Supreme Court of Louisiana.
January 21, 2004.
*184 Christopher E. Lawler, Christopher P. Lawler, Donovan & Lawler, Metairie, for Applicant.
Keith M. Whipple, Houma, for Respondent.
CALOGERO, Chief Justice.
This dog-bites-man case represents the first time this court has considered the application of the legislature's 1996 revision of Louisiana Civil Code Article 2321 regarding the liability of an animal owner, particularly with respect to ownership of dogs. In pertinent part, Article 2321 as amended by Acts 1996, 1st Ex.Sess., No. 1, § 1, provides: "Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog." While the legislature may have generally eliminated strict liability for owners of animals, it specifically continued strict liability for owners of dogs. In this process, however, the legislature limited the scope of that strict liability to situations in which (1) the dog owner could have prevented the injury and (2) the injury did not result from provocation of the dog by the injured party. We granted the writ application in this case to determine the parameters of Article 2321 governing strict liability for dog owners, as well as to review the finding of liability in this case by the trial court.
For the reasons explained below, we find that, to establish a claim in strict liability against a dog owner under La. Civ.Code art. 2321 as amended in 1996, the plaintiff must prove that his person or property was damaged by the owner's dog, that the injuries could have been prevented by the owner, and that the injuries did not result from the injured person's provocation of the dog. We hold that, to establish that the owner could have prevented the injuries under Article 2321, the plaintiff must show the dog presented an unreasonable risk of harm. Because the lower courts erred in not requiring such a showing, we have reviewed the evidence de novo and have concluded that the defendant's dog under these facts did not present an unreasonable risk of injury to the plaintiff and, therefore, that the plaintiff has failed to establish a claim in strict liability under La. Civ.Code Art. 2321. Consequently, for the following reasons, we reverse the court of appeal's judgment.

I.
The facts surrounding the dog bite in this case are fairly straightforward. The plaintiff, Dustin Pepper, is a thirty-year-old man who lives with his parents and has domiciliary custody of his two minor children. The defendant, Thomas Triplet, along with his wife and minor son, has lived next door to the Peppers for many years. About thirteen years prior to the *185 incident which gave rise to this lawsuit, the defendant purchased a dog and named it Bandit. In his deposition, the defendant described the dog as a thirteen-year-old, Labrador/Huskie mixed breed. The defendant's backyard, where Bandit resided, was entirely fenced in. Along both sides of the defendant's backyard was a fourfoot high hurricane or chain-link fence, which was topped by two feet of barbed wire on the side shared with the Peppers. The yard was bordered along the back by a wooden fence, described as being six or eight feet in height. The backyard could be accessed either through the defendant's home or through a six-foot wooden gate located on the Peppers' side of the Triplet home. There is no latch on the outside of this gate, and the defendant had placed a metal pipe across the gate on the inside to prevent the gate from being opened from outside and to prevent the dog from escaping. The defendant testified that Bandit early on "showed a tendency to guard his turf," and would bark and run along the fence when he saw someone in a neighboring yard.
Although they had been neighbors for many years, the plaintiff had never been invited into the defendant's house or backyard. Whenever children playing in the Peppers' yard would accidentally toss a ball over the fence into the Triplets' backyard, the custom, according to both parties, was for the child to knock on the Triplets' door, and either the defendant or his wife would go into the yard to retrieve the ball. The plaintiff's only contact with Bandit prior to the bite involved his petting the dog's nose through the chain-link fence separating the yards.
On November 11, 2000, the plaintiff was watching a football game with a friend and drinking beer. The plaintiff's son, who had been playing in the backyard, came in and told him that the ball had gone into the defendant's yard. The plaintiff instructed his daughter to knock on the Triplets' door and ask for the ball; she returned shortly thereafter and announced that the Triplets were not home. At this point, the plaintiff went into the Triplets' yard himself to retrieve his son's ball. The plaintiff testified that he did not want his son climbing the fence into the Triplets' yard and that he decided not to await the Triplets' return because this particular football was his son's favorite ball.
To gain access to the Triplets' backyard, the plaintiff testified that he "unlocked the gate and went in ... their yard." He explained that the gate was secured by a metal pipe that protruded through the fence into his yard and that he "shoved" the pipe, which allowed the gate to open. The plaintiff admitted that he had never been given permission to enter the yard and that he knew Bandit was "territorial." Nevertheless, he entered the yard, and was met by Bandit, who then followed him as he walked towards the ball. When the plaintiff reached down for the ball, Bandit bit him on the hand. The plaintiff pulled back his hand, and Bandit then bit him on the stomach. The plaintiff testified that Bandit let him go when he commanded the dog to stop. Thereafter, the plaintiff left the yard through the gate and replaced the metal pipe. After initially washing the wound with water, he was taken by a friend to the hospital, where he received treatment for his injuries.
This was not the dog's first biting incident. Some four to six weeks earlier, a boy visiting the plaintiff's children had used a ladder, apparently belonging to the Peppers, to climb the fence from the Peppers' backyard into the defendant's backyard. According to the defendant, the boy's mother informed him of the incident in verifying the health of the dog. The following day, the defendant checked his *186 gate and fence to make sure they were secure, and he also discussed the incident with the plaintiff's mother, Mrs. Linda Pepper.
The plaintiff subsequently brought suit against the defendant and his insurer, Allstate Insurance Company. Following a one-day bench trial, the district court rendered a judgment in favor of the plaintiff, awarding him $37,623.92 in damages. After citing Frank L. Maraist, Thomas C. Galligan, Louisiana Tort Law (Michie 1996), the district court agreed with the authors that the "which the owner could have prevented" language in the newly revised La. Civ.Code art. 2321 with respect to dog owners was ambiguous. Nevertheless, the court found the defendant strictly liable because he could have prevented the injury and there was no evidence of provocation by the plaintiff. The court reasoned that the defendant could have prevented the injury, by warning the plaintiff and his family not to enter the yard, by placing a "beware of dog" sign on his fence, or by tying or otherwise restraining the dog inside the fence. The court further found no evidence of provocation.
The district court next rejected the defendant's argument that the plaintiff was a trespasser and that the defendant was entitled to an expectation of privacy. The court reasoned that the law regarding uninvited guests was not applicable; that, while the plaintiff was a trespasser, the parties were on friendly terms and the plaintiff had never been warned to stay out of the defendant's yard; and that, despite the defendant's right to privacy, the defendant had a duty and responsibility to the community to protect them from injury caused by his dog, because it was not uncommon for neighbors to enter the yards of other neighbors. The court apportioned 25% fault, however, to the plaintiff, reasoning that the plaintiff had taken some risk entering his neighbor's backyard with a dog he knew was never allowed out on the street, that the plaintiff could have waited until the defendant or his wife had returned home, and that entering the backyard was not the usual means by which the plaintiff or his children retrieved a stray ball in the neighbor's backyard.
As will be discussed in more detail below, a majority of the court of appeal affirmed. Pepper v. Triplet, 02-0022 (La. App. 1 Cir. 12/20/02), 834 So.2d 624.

II.

A. CIVIL CODE ARTICLE 2321 LIABILITY PRIOR TO 1996
Prior to the 1996 legislative changes, Article 2321 of the Civil Code provided in pertinent part that "[t]he owner of an animal is answerable for the damage he has caused...."[1] The two seminal cases addressing liability under former Article 2321 are Holland v. Buckley, 305 So.2d 113 (La.1974), and Boyer v. Seal, 553 So.2d 827, 832 (La.1989). In Holland, the plaintiff's German Shepherd was running loose in plaintiff's front yard when it bolted across the street and attacked the defendant's poodle walking on the opposite sidewalk. The defendant was bitten when he lifted his poodle out of the German Shepherd's reach. The Holland court found the defendant to be strictly liable for the plaintiff's injury. In Boyer, the plaintiff *187 tripped over her daughter's house cat that had startled her when it rubbed against her leg while she was visiting in her daughter's home. The Boyer court declined to hold the daughter strictly liable for her mother's injury, finding that the cat had not posed an unreasonable risk of harm. The reasoning of both decisions will be discussed more fully below.
Early cases addressing Article 2321 liability against animal owners, such as Montgomery v. Koester, 35 La. Ann. 1091 (1883), for example, noted that French interpretations of French Civil Code Article 1385, essentially identical to Louisiana's Article 2321, had imposed strict liability upon the owner for harm caused by the animal, except in cases of force majeure or of contributory fault of the injured person, and regardless of whether the animal was vicious or whether the owner knew of its vicious character. Holland v. Buckley, 305 So.2d at 116. The English rule, in contrast, was based on negligence, such that the owner was responsible for harm caused by his animal only if he knew the animal was dangerous and nevertheless allowed it to escape and thereupon do harm. Holland, 305 So.2d at 116-17. And in Delisle v. Bourriague, 105 La. 77, 29 So. 731 (1901), the court characterized Article 2321 as
founded upon the presumption that the fault is chargeable to the owner of the animal that caused the damage, or to the person in whose use or under whose care it was at the time of the accident; and that presumption can be made to give way only in the presence of proof either of an unforeseen event or by the imprudence of the one injured....
105 La. at 83-84, 29 So. at 734.
Around the turn of the Nineteenth Century, however, a line of jurisprudence in Louisiana interpreting Article 2321 began to adopt a standard of negligence that has been described as the "first bite" rule, in which the owner of a domestic animal owes no general duty to guard against harm to third persons until the animal has displayed dangerous propensities. See Frank L. Maraist, Thomas C. Galligan, Louisiana Tort Law, Sect. 14-7, p. 346 (Michie 1996) (hereinafter Maraist & Galligan); see also Tripani v. Meraux, 184 La. 66, 165 So. 453 (1936); Martinez v. Bernhard, 106 La. 368, 30 So. 901 (1901). The reasoning was that an owner who neither knew nor should have known that his animal posed some danger to others, perhaps by proving the previously gentle nature of the creature, could not have foreseen the "first bite," and thus would not be held responsible when the animal first caused damage. Holland, 305 So.2d at 119; see also Frank L. Maraist, Thomas C. Galligan, Jr., Burying Ceasar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tul. L.Rev. 339, 352 (1996) (hereinafter Burying Ceasar).
According to Holland, three lines of cases developed after the appearance of the "first bite is free" approach in Martinez v. Bernhard. One line of cases allowed the victim to recover from the owner upon proof of the dangerous propensities of the animal and the owner's presumed knowledge thereof. 305 So.2d at 116-17. Though this approach was essentially what the Holland court would ultimately adopt, the court noted that the cases had reached their holdings with little or no consideration of Article 2321. Id. at 117. A second line of cases held that the harm caused by the animal created a presumption of fault on the part of its owner, which shifted the burden to the owner to show that he was free of even the slightest fault; however, the owner could exculpate himself from liability by showing that he himself did not contribute to the accident by some lack of care on his part, i.e., that he *188 was not negligent. Id. at 117. The third line of cases required the victim to prove both the existence of a dangerous propensity of the animal and also the knowledge of such propensity on the part of the owner. Id. The Holland court noted that this approach placed a heavy burden upon the plaintiff and had no support in the text of Article 2321 or its legislative or jurisprudential history. Id.
The Holland court, rejecting any negligence based approach to liability for damages caused by animals, set forth what it held to be the correct interpretation of Article 2321:
When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event.
The chief difference between this view and that of the second line of cases cited above is that, therein, the owner was permitted to exculpate himself of fault by showing that he himself did not contribute to the accident by some lack of care on his part. Under our present holding, the owner can exculpate himself from the fault of having his animal hurt someone only by proving that the harm resulted from some independent cause not imputable to the defendant.
The underlying reason for the owner's liability is that, as between him who created the risk of harm and the innocent victim thereby injured, the risk creator should bear the loss. He maintains the animal for his own use or pleasure.
Holland, 305 So.2d at 119 (footnote omitted).
The Holland court observed that "[i]n the crowded society of today, the burden of harms caused by an animal should be borne by its master who keeps him for his own pleasure or use rather than by an innocent victim injured by the animal." Holland, 305 So.2d at 119 and 120; see also Boyer v. Seal, 553 So.2d at 832. As this court later explained, the injured person need not prove the negligence of the owner. Howard v. Allstate Ins. Co., 520 So.2d 715 (La.1988). Liability arises solely from the legal relationship between the owner and the animal. Rozell v. Louisiana Animal Breeders Co-op., Inc., 434 So.2d 404 (La.1983). Ultimately, the Holland court held the owner of the dog liable to the plaintiff whom the dog had bitten, because the owner did not rebut the presumption of fault created by the injury caused by the dog. Id. at 120.
A year later, this court decided Loescher v. Parr, 324 So.2d 441 (La.1975), a case involving a person's liability under La. Civ. Code art. 2317 for the damage caused by an inanimate thing over which he has garde.[2] The Loescher court adopted a variation *189 of the French interpretation of Article 1384 of the Code Napoleon, holding that, under La Civ.Code art. 2317, a guardian of a thing is liable when a plaintiff proves (a) that the thing which caused his damage was in the garde of the defendant, (b) that there was a defect or vice in the thing, i.e., an unreasonable risk of harm was created by it, and (c) that his damage occurred because of this defect or vice, unless the guardian can prove the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Loescher v. Parr, 324 So.2d at 449.
The Loescher decision, therefore, did two things: it not only applied a relational responsibility strict liability theory to Article 2317 damage claims, but it also set forth an analytical method for determining whether a thing possessed a defect or vice for which the guardian should be held strictly liable. As we noted in Boyer, the Loescher formula for determining a guardian's responsibility contained a "limitation" on strict liability not recognized by the French jurisprudence, i.e., the damage must have been caused by a vice or aspect of the thing that creates an unreasonable risk of harm to others.[3]Boyer, 553 So.2d at 832. Nonetheless, in explaining the rationale for this analytical method, the court in Loescher described its previous interpretations of Civil Code articles 2318, 2320, 2321 and 2322 as logically consistent with such a method. 324 So.2d at 446. The Loescher court then summarized the principles of legal fault underpinning these articles as follows:
When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.
Loescher, 324 So.2d at 446.
Subsequent to Loescher, this court in Boyer resolved any lingering question whether the injured plaintiff, in order to establish strict liability against the owner of an animal, as against the owner of a thing or building, must prove that the damage suffered by the plaintiff was caused by an animal that created an unreasonable risk of harm.[4] In Boyer, this court acknowledged the Loescher court's attempt to give manageable scope to strict liability and to harmonize its application by setting forth a coherent principle, i.e., *190 "that the guardian of the person or thing should bear the cost of damage caused through unreasonable risks of harm that his charge creates." 553 So.2d at 834. Accordingly, the court rejected "expand[ing] responsibility for animals into a rule of superstrict liability." Id. The Boyer court reasoned:
There are various policies supporting the unreasonable risk principle: As Loescher observes, the person who has the guardianship and usually the enjoyment of the person or thing should bear the cost of damage caused by risks they create rather than the innocent victim. Further, it is thought that the guardian is in a better position to anticipate, detect, guard against, and insure against these risks, making him a better risk spreader and more efficient conductor of the deterrent effects of civil liability. A competing policy, however, is that the guardian should not be responsible for protecting against all risks; some risks are relatively too small to require him to protect others therefrom. Thus, if the unreasonable risk of harm principle were to be abolished in the cases involving liability for animals, these policies would tend to be defeated or at least not promoted and owners would be made insurers against loss from any risk, no matter how insignificant or socially tolerable the risk might be. We see no reason that animal owners should be treated less favorably than owners of buildings and guardians of inanimate things under strict liability conceptions of the Civil Code. Moreover, it would appear that doing so might undermine the principle's application to strict liability under other delictual articles of the Code. Consequently, we conclude that the unreasonable risk of harm principle should be maintained in animal cases in the interest of the continued manageable and harmonious application of strict liability under the Civil Code.
Boyer v. Seal, 553 So.2d at 834 (emphasis supplied). Essentially, then, Boyer applied the unreasonable risk of harm principle to animals in order to limit strict liability against their owners because of the competing social policy that the owner of an animal should not be required to insure against all risks and because the court had been applying the same or similar principle to things and buildings.
With the unreasonable risk of harm principle established as applicable to animal owners, the Boyer court determined that the cat in that case had not posed an unreasonable risk of harm. The method for determining whether a thing under garde poses an unreasonable risk of harm, the court noted, is similar to that of taking into account all of the social, moral, economic and other considerations as would a legislator regulating the matter, and the analysis is virtually identical to the riskutility balancing test used in both negligence and products liability theories. 553 So.2d at 834-36 (citing inter alia Entrevia v. Hood, 427 So.2d 1146 (La.1983), and Bell v. Jet Wheel Blast, 462 So.2d 166 (La. 1985)).
To summarize, the Holland court, in applying Article 2321 to damages caused by animals, relied upon early Louisiana jurisprudence addressing Article 2321 and upon French commentators' interpretations of similar Article 1385 of the Code Napoleon. Holland thereupon rejected a "first bite is free" negligence approach in favor of a strict liability theory. The Boyer court later applied to animals the unreasonable risk of harm principle, a limitation on strict liability articulated in Loescher, to determine whether the owner of an animal should be held strictly liable for the damages caused by his animal.

*191 B. CIVIL CODE ARTICLE 2321 AND THE 1996 TORT REFORM ACT
In 1996, the legislature revised Civil Code Article 2321 regarding liability for damage caused by animals, which now reads:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Acts 1996, 1st Ex.Sess., No. 1, § 1, eff. April 16, 1996 (Emphasis supplied).
Our courts of appeal, as well as various commentators, have noted that the 1996 revision results in an ordinary negligence standard for owners of all animals except dogs, whose owners continue to be governed by a strict liability standard. See Maraist & Galligan, § 14-7; Comment (Joseph F. Piacun), The Abolition of Strict Liability in Louisiana: A Return to a Fairer Standard or an Impossible Burden on Plaintiffs?, 34 Loy. L.Rev. 215 (1997) (hereinafter The Abolition of Strict Liability in Louisiana). However, whether that standard remains the same as was articulated in Loescher v. Parr and explicitly made applicable to animal owners in Boyer v. Seal has, in light of increasing litigation under Article 2321, become a significant unresolved issue of law, in our view. Accordingly, we granted the defendants' writ application in this case to consider the 1996 changes to Article 2321 with respect to dogs and dog owners. Pepper v. Triplet, 03-0619 (La.6/6/03), 845 So.2d 1074.
The first court to examine liability for dog owners under the new Article 2321 was Allen v. State Farm Fire and Cas. Co., 36,377 (La.App. 2 Cir. 9/18/02), 828 So.2d 190, writ denied, 02-2577 (La.12/19/02), 833 So.2d 343. The Second Circuit in Allen, affirming summary judgment for the plaintiff, asserted that the 1996 revision "effectively ended strict liability for all animal owners except dog owners." 828 So.2d at 193 (citing The Abolition of Strict Liability in Louisiana, 34 Loy. L.Rev. at 231-34). With regard to dog owners, the court reasoned, the legislature had "retain[ed]" strict liability, yet "defin[ed] a three-part test" to determine liability under Article 2321:
First, the dog must have actually caused the damage to the plaintiff's person or property. Second, the owner must have been able to prevent the damages, but failed to do so. Third, the damages must not have been caused by the injured person's provocation of the dog.
828 So.2d at 193 (citing The Abolition of Strict Liability in Louisiana, 34 Loy. L.Rev. at 231-34).
The Allen court specifically rejected the defendants' argument that the plaintiff must still prove that the animal posed an unreasonable risk of harm under a balancing test, finding that the amended article does not require such a showing. Id. at 194. In applying the second part of the new test, the Allen court reasoned that the amended article "recognizes the obvious and great risk that a dog might bite someone," and therefore "imposes on the owner a duty to prevent dog bites." Id. Although *192 the defendants in Allen maintained that their fence adequately prevented the dog from exiting the yard, the court found that the fence, which had a loose board through which the dog placed his head and bit the plaintiff, had failed to prevent the bite. The court reasoned that the defendants could have chained the dog or kept it indoors, and thus failed to prevent the damage to the plaintiff.
In the instant case, the First Circuit also addressed liability for dog owners under Article 2321. A majority of the appellate court affirmed the district court's judgment in favor of the plaintiff, though one judge dissented as to the fault allocation, believing that the plaintiff should have been assessed with 75% of the fault. The court of appeal stated that strict liability was replaced by a negligence standard for animals generally, but that the legislature retained strict liability for dog owners. The court then found that the amended article sets forth a three-part test for strict liability: A dog owner is liable if (1) the dog actually caused the damage to the plaintiff's person or property, (2) the owner could have prevented the damage, and (3) the dog was not provoked by the person suffering the damage. 02-0022, p. 5, 834 So.2d at 628.
After noting that the defendant's dog had caused the damage, the court of appeal in the instant case turned to whether the defendant could have prevented the damage. The court rejected the defendant's argument that nothing the defendant could have done would have prevented damage to the plaintiff because the yard had been completely fenced and the gate secured, and the defendant had never given permission to the plaintiff to enter the yard. The court relied on Allen, supra, for the proposition that erecting a fence does not discharge the dog owner's duty to prevent dog bites and other damage. The court concluded that the district court had not manifestly erred in finding that the defendant could have prevented the injury by placing a "Beware of Dog" sign on the fence, by securing the gate by a more reliable means, or by chaining the dog. The court also found no error in the trial court's implicit finding that the defendant could have advised the plaintiff of the dog's propensity to bite, a fact of which the defendant had prior knowledge but which the plaintiff did not.

C. DEFENDANT'S ASSIGNMENTS OF ERROR NOS. 1 AND 2
In their first and second assignments of error, the defendants contend the lower courts erred in applying a standard of absolute liability, rather than strict liability, and failed to determine whether the defendant's dog posed an unreasonable risk of harm, an integral element of the strict liability standard called for by Article 2321. The defendants also assert the lower courts erred by literally interpreting the "could have prevented" language found in Article 2321. The defendants contend the fact-finder should continue to determine whether the dog posed an unreasonable risk of harm before imposing strict liability upon the owner, and they argue that the plaintiff failed to prove in this case that Bandit, enclosed within a secure fence, posed an unreasonable risk of harm to the trespassing plaintiff.
The defendants also argue that, although the codal article as revised expressly retains strict liability, it introduces "muddled" and ambiguous language in the form of the "could have prevented" phrase. The defendants maintain that the legislature intended to apply a modified form of strict liability to allow dog owners to exonerate themselves if they could not have prevented the damages or if the injured person has provoked the dog. The First *193 Circuit, the defendants argue, applied this language too literally so that it results in imposition of absolute liability upon dog owners, contrary to the intent of the legislature, because in hindsight one may always envision some way by which the bite could have been avoided. The defendants assert that the "could have prevented" language should be read out of the article and the unreasonable risk of harm requirement maintained. Alternatively, the defendants call for a "reasonableness" standard to apply to what actions the dog owner must take to prevent injury to a third person.

D. DISCUSSION
The issue before us, therefore, is whether the legislature in amending Article 1996 has negated the requirement, articulated in Loescher v. Parr and then applied to animals in Boyer v. Seal, that the plaintiff must show that the animal posed an unreasonable risk of harm before he may recover against the owner of the animal under the strict liability of the newly revised Article 2321. The Second Circuit in Allen has held that the plaintiff is no longer required to show that the dog posed an unreasonable risk of harm to permit recovery under this article, and the court of appeal in the instant case did not require such a showing before awarding the plaintiff recovery in strict liability under Article 2321. Whether a showing that the dog posed an unreasonable risk of harm remains necessary following the revision, however, cannot be decided without also addressing the language in the revised Article 2321 that the injury must be one that "the owner could have prevented." Maraist and Galligan have commented that the language is susceptible of different meanings that would render the language either superfluous or impose an absolute liability; instead, assuming the unreasonable risk of harm test will continue to determine strict liability for dog owners, they suggest the language "could have been prevented" might simply be ignored, as is similar language in La. Civ. Code art. 2322 regarding master and their servants. Burying Ceasar, 71 Tul. L.Rev. at 354-55. Another writer on the subject has suggested that the question of whether the owner could have prevented the injury should be answered by balancing the risks with the dog's utility. Comment, The Abolition of Strict Liability in Louisiana, 34 Loy. L.Rev. at 234 (citing Entrevia v. Hood, 427 So.2d at 1149-50).
The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of the government. Touchard v. Williams, 617 So.2d 885 (La.1993). Under the general rules of statutory construction, courts begin with the premise that legislation is the solemn expression of legislative will and, therefore, the interpretation of a law involves, primarily, the search for the legislature's intent. La. Civ.Code art. 1; Falgout v. Dealers Truck Equipment Co., 98-3150, p. 2 (La.10/19/99), 748 So.2d 399, 401. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9; Falgout, 98-3150 at p. 2, 748 So.2d at 401. Further, it is a well-recognized and longestablished rule of statutory construction that statutory provisions should be construed along with the remainder of the statute, and all statutes on the same subject matter should be read together and interpreted as a whole to effect the legislative intent and should be construed in such a way as to reconcile, if possible, apparent inconsistencies or ambiguities so that each part is given effect. Comm-Care Corp. v. Bishop, 96-1711 (La.7/1/97), 696 So.2d 969. Courts should give effect to all parts of a *194 statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. In re Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1129. It is presumed that the intention of the legislative branch is to achieve a consistent body of law. Boyter, 99-0761 at p. 9, 756 So.2d at 1130. The starting point for the interpretation of any statute, then, is the language of the statute itself. Touchard v. Williams, 617 So.2d at 888.
As previously set forth, revised Article 2321 reads in pertinent part: "Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog." Given the introductory clause of this provision, there can be no doubt, then, that the legislature intended to allow damage claims based upon strict liability against owners of dogs. The primary difference between ordinary negligence and strict liability is that, with the latter, the plaintiff need not prove the defendant's actual or constructive knowledge of the animal's dangerous propensities. Kent v. Gulf States Utilities Co., 418 So.2d at 497-98. Thus, the inability of a defendant to know or prevent the risk is not a defense in a strict liability case even though it precludes a finding of negligence. Entrevia v. Hood, 427 So.2d at 1150. Given that Article 2317 and the first clause of former Article 2321, now the first sentence of revised Article 2321, seemingly impose liability without fault in all cases upon the owner or guardian of the defective thing or animal, the Loescher and Boyer cases effectively represented an attempt to limit the owner or guardian's strict liability under the rationale that the owner should not be required to insure against all injury however small the risk might be.
In this light, we do not see a practical change in how the courts should apply Article 2321 to dog claims with respect to the "which the owner could have prevented" language. We do not read that language as either superfluous or a new limitation on strict liability, nor do we read it as an expansion of liability toward a superstrict or absolute standard. Instead, we read that language as merely continuing to require that the plaintiff, in order to establish a claim in strict liability, show that the risk of injury outweighed the dog's utility such that it posed an unreasonable risk of harm. If the animal posed an unreasonable risk of harm, then the owner will be presumed to be at fault, because he failed to prevent an injury he could have prevented, and he will be held strictly liable for an injury caused by his dog, unless he can show that the injury was due solely to the fault of a third party unattributable to him or to a fortuitous event, or, as Article 2321 now provides, the plaintiff fails to establish that the injuries did not result from the injured person's provocation of the dog. Such a construction of the "could have prevented" clause, we believe, is supported by the historical jurisprudence discussed above and, more importantly, follows the language of the codal article as well as the intent of the legislature, which was to retain strict liability, as that legal doctrine has been applied in Louisiana, with regard to owners of dogs.[5]
*195 We, therefore, disapprove of the holding of the Second Circuit in Allen, apparently relied upon by the First Circuit in the instant case, that the plaintiff is no longer required to show that the dog posed an unreasonable risk of harm in order to establish a claim of strict liability under Article 2321. We disagree with the Second Circuit's implicit finding that the legislature intended to impose upon owners of dogs a form of strict liability more stringent than that imposed upon them in Holland and Boyer, while at the same time eliminating strict liability against owners of all other animals, including, perhaps, wild animals. The legislature, as evidenced by the 1996 amendments to Louisiana tort law, was more concerned with the persons to whom strict liability would apply than the method for establishing a strict liability claim, if permitted. In Holland, itself a dog bite case, we recognized in the former Article 2321 that the owner of an animal could be strictly liable for injuries caused by his animal. Therefore, the legislature's 1996 amendment of Article 2321 simply changes the law to make Holland and the strict liability doctrine no longer applicable to animals other than dogs. Furthermore, as we explained in Boyer, the unreasonable risk of harm principle represented, in effect, a limitation, albeit perhaps a partially jurisprudential one, upon the reach of strict liability, so the owner of an animal is not required to insure against all risk or loss. We detect no legislative retreat from that principle in the 1996 amendment to Article 2321.
Accordingly, we hold that the method established in Louisiana for determining strict liability was continued by the legislature with regard to dog owners in La. Civ.Code art. 2321, and that, to ascertain whether the owner could have prevented the injury or damage, the plaintiff must establish that the dog posed an unreasonable risk of harm. Therefore, the lower courts erred when they held that plaintiffs are not required to establish that the defendant's dog posed an unreasonable risk of harm to the plaintiff before the plaintiff may recover under the strict liability provision directed to dog owners in revised Article 2321.

III.
We next review the record de novo to determine whether the defendant's dog posed an unreasonable risk of harm to the plaintiff. In Boyer v. Seal, we stated that the criterion for determining whether a defendant has created or maintained an unreasonable risk of harm is a balancing of *196 claims and interest, a weighing of the risk and gravity of harm, and a consideration of individual and societal rights and obligations. We have explained that the judicial process involved in deciding whether a risk is unreasonable is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem, and in deciding the scope of duty or legal cause under the duty risk analysis. Entrevia v. Hood, 427 So.2d at 1149. The rationale is that in "both delictual areas the judge is called upon to decide questions of social utility that require him to consider the particular case in terms of moral, social and economic considerations, in the same way that the legislator finds the standards or patterns of utility and morals in the life of the community." Id.
With regard to the defendant and his dog, the record reveals that the dog was completely enclosed within a secure fence. On the plaintiff's side of the defendant's yard, there was a four-foot chain link fence with two feet of barbed wire above it. Thus, to enter the defendant's yard from the plaintiff's yard, one would have to scale this fence. Apparently, a child visiting the plaintiff's children had done so some four or six weeks prior to the incident involving the plaintiff. The facts surrounding the prior incident are not well known, except that the boy may have used a ladder belonging to the plaintiff or his parents to climb over the fence and that the boy was bitten. The severity of the bite or what happened when the boy dropped into the yard is not in evidence. However, the defendant was informed of the bite by the boy's mother, who wanted to verify that the dog was free of disease, and the next day, according to his uncontradicted testimony, the defendant went to the home of the plaintiff and spoke with the plaintiff's mother about the incident. Although the trial court could not say that the defendant had warned the plaintiff's mother not to allow children to go over the fence, it is certain that the plaintiff's mother was aware of the danger should any of her grandchildren or their friends go into the defendant's yard.
The defendant also verified that his fence was secure and that his gate, which led from a side yard to the backyard, was also secure. Generally then, the defendant's dog did not present an unreasonable risk of harm to anyone outside of the defendant's backyard. As the court in Bell v. State Farm Fire & Cas. Co., 94-0460 (La.App. 4 Cir. 5/5/94), 643 So.2d 1262, writ denied, 94-1433 (La.9/23/94), 642 So.2d 1289, reasoned "the presence of a dog within a fenced side yard in an urban neighborhood does not create an unreasonable risk of harm." However, given the prior bite, the trial judge was not without reason to warn the defendant that, should his dog escape from the backyard, there could be serious consequences. Nonetheless, the trial judge specifically stated that he could not find that the locking mechanism used on the defendant's gate was unreasonable, though he did opine that the defendant should consider a better means of preventing egress by the dog. The court of appeal suggested that the defendant could have tied or chained the dog within the yard or could have kept the dog inside the house. Yet, these steps were not necessary under the facts of this case to protect the innocent public from harm by the dog.
On the other hand, the plaintiff, an adult male, entered the defendant's yard without authorization by unlocking the gate from the defendant's side yard. As noted in Entrevia v. Hood, "the wholesale immunities from civil responsibility resulting from the common law classification of a person as a trespasser are not recognized by our law." 427 So.2d at 1150 *197 (citing Cates v. Beauregard Elec. Co-op., Inc., 328 So.2d 367 (La.1976)). But the court in Entrevia did acknowledge that a criminal trespass under La.Rev.Stat. 14:63 is legally and morally reprehensible conduct and that "[a]n owner of property has valid economic and privacy interests which our law seeks to protect from intruders." Id. And in Holland, this court posed the question before it as: "When an innocent bystander is bitten by a dog, who shall bear the damages so caused? The bystander passing on the street, who did not provoke the attack? Or the owner of the dog, who created the risk by letting the dog go loose?" 305 So.2d at 114.
The defendant argued that the trial court should have made a specific finding that the plaintiff had committed a trespass. While it is clear that the plaintiff intentionally entered the defendant's immovable property when he knew that his entry was unauthorized, the plaintiff may have had an affirmative defense to a criminal trespass charge under La.Rev.Stat. 14:63(C)(2), because the defendant's yard was not both fenced and posted with "no trespassing" signs as required by La.Rev. Stat. 14:63(E)(3). Nevertheless, the plaintiff's conduct does amount to a delict under La. Civ.Code art. 2315 in that he knowingly entered the defendant's property without his authorization. Article 2315 of the Civil Code provides in pertinent part that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. A civil trespass is defined as the unlawful physical invasion of the property or possession of another. Dickie's Sportsman's Centers, Inc. v. Department of Transp. and Development, 477 So.2d 744, 750 (La.App. 1st Cir.), writ denied, 478 So.2d 530 (La.1985). And a trespasser has been defined as "one who goes upon the property of another without the other's consent." Williams v. J.B. Levert Land Co., Inc., 162 So.2d 53, 58 (La.App. 1st Cir.), writ refused, 245 La. 1081, 162 So.2d 574 (1964); see also Britt Builders, Inc. v. Brister, 618 So.2d 899, 903 (La.App. 1st Cir.1993). Under these facts, then, it is clear that the plaintiff committed a trespass.
The trial court opined, however, that it was foreseeable that balls would be accidentally tossed into the defendant's yard and that neighbors or children might enter the yard to retrieve the ball, such that the defendant could have posted signs warning of the dog or done something more to keep someone out of his yard. And the dissenting judge below reasoned that the defendant had a duty to protect from harm his neighbor and the community. However, the plaintiff's conduct in entering the yard was both intentional, in that he had never been given permission to enter the defendant's yard, and unforeseeable, in that the usual custom between the parties was to ask the defendant or his wife to retrieve the ball or, if they were not home, to await their return. As the dissenting judge acknowledged, a neighbor has no right to enter another's yard without express or tacit consent, and a fence indicates a desire to be free from intrusion, with the presence of a dog emphasizing that desire.
Under the facts of this case, until the plaintiff intentionally and knowingly entered the defendant's backyard without authority, the defendant's dog did not present an unreasonable risk of harm to the plaintiff or the public. Securing dogs in his or her yard is what is expected of a dog ownerit protects the dogs and it protects the innocent public. When a person who knows the security measures established by the owner, having abided by them in the past, nevertheless breaches that security, he eliminates the dog's isolated environment and, in essence, turns the dog loose upon himself. This is not a case of a dog running down the street unfettered to *198 prey upon the public. The owner secured the dog against contact with outsiders by enclosing the dog within the fence and, with regard to his neighbors, by notice to the plaintiff's mother, an adult in that household, that the dog had previously bitten a child that had entered the defendant's yard through the plaintiff's yard. Secured, the dog posed no unreasonable risk of harm. Secured, the dog also was not subject to provocation. Secured, the dog was able to guard and protect his master's home with no undue risk of harm to the innocent public. By breaching the security that the dog's owner had created, the plaintiff negated that security. After balancing the various claims and interests, weighing the risk to the public and the gravity of harm, and considering individual and societal rights and obligations, we conclude that, under the facts of this case, the dog did not pose an unreasonable risk of harm. Accordingly, the plaintiff failed to establish a claim against the defendants in strict liability pursuant to Article 2321.

IV.
We next turn to the defendant's assertion the trial court erred in assigning 75% fault to the defendant and only 25% fault to the plaintiff, a finding which the majority of the court of appeal affirmed.[6] The defendant also asserts he was not negligent and should be found to bear no fault for the plaintiff's injuries.
Under Article 2321, the "owner of an animal is answerable for the damage caused by the animal." However, as amended in 1996, the article further provides that the owner "is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." The defendant asserts he exercised reasonable care by enclosing the dog inside a fence with a secure gate. He argues there was nothing he could do to prevent the injury to the plaintiff who committed a trespass and entered the yard even though he knew a dog exhibiting territorial behavior was present, who had never been permitted in the yard, and who could have waited until the defendant or his wife returned to retrieve the ball as had been the custom between the parties for a number of years. The defendant argues that requiring him to do anything more than to ensure that the dog is enclosed within a secure fence would be unreasonable.
The plaintiff asserts the defendant knew or should have known of the dangerous propensities of his dog given the fact that the dog had some four weeks earlier bitten a child that had climbed over the defendant's fence using a ladder. The plaintiff also contends the defendant could have warned the plaintiff of the dog's propensity to bite either by telling him or posting signs on the fence, or by chaining or otherwise restraining the dog inside yard.
The lower courts did not apply a negligence standard to the plaintiff's claim, because they found the defendant to be strictly liable. However, as we noted above, that finding was legally incorrect because the lower courts had not imposed the requirement that the plaintiff establish that the defendant's dog posed an unreasonable risk of harm. However, the plaintiff did assert in his petition that the defendant was "on notice of the vicious propensities" of the dog because the dog "had bitten another individual within *199 weeks" of the incident involving the instant plaintiff. Elsewhere, the plaintiff asserted that the defendant could have taken a number of actions that could have prevented his injuries, but the defendant failed to do so. Accordingly, we find that the plaintiff has asserted a claim in negligence under Article 2321. Because the lower courts erred in not considering this latter claim, we will review the matter de novo.
In order for liability in negligence to attach under our traditional duty/ risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). Davis v. Witt, 02-3102, 02-3110 (La.7/2/03), 851 So.2d 1119. Under a duty/ risk analysis, the court must view the defendant and plaintiff as individual and unique social actors, taking into account the conduct of each party and the peculiar circumstances of the case. Socorro v. City of New Orleans, 579 So.2d 931, 938 (La. 1991).
Applying those principles to the instant case, we do not find that the plaintiff has sufficiently established the elements of a negligence claim against the defendant. Initially, we note that, while the defendant may have owed a general duty to protect the public and his neighbors from harm caused by his dog, such a duty is logically attenuated as regards a trespasser, particularly an adult male, even if that trespasser is a neighbor who may not possess criminal intent. While we agree with the lower courts that the status of the plaintiff as a trespasser is not alone determinative of the duty owed to him by the dog owner, that status, in light of the particular circumstances of the case, is surely relevant to the determination of the duty owed. See, e.g., Cuevas v. City of New Orleans, 99-2542 (La.App. 4 Cir. 6/21/00), 769 So.2d 82. At any rate, as we previously found, the plaintiff's behavior in entering the defendant's fenced yard without permission amounted to a trespass.
In this case, the plaintiff at trial answered affirmatively when his counsel asked him whether his behavior (presumably entering the defendant's yard without permission) would have been "altered" if he had known that the dog had bitten someone a month earlier. On the other hand, the defendant testified that, the day after he learned of the earlier incident in which a child who had been visiting at the plaintiff's home had scaled the fence and been bitten by the dog, he checked to make sure his fence and gate were secure. He also went over to the plaintiff's home and discussed the incident with the plaintiff's mother, Mrs. Pepper, the matriarch of the home. Although Mrs. Pepper could not recall when she had talked to the defendant, she could not dispute the defendant's testimony. Although the lower courts apparently reasoned that the defendant, who certainly was aware of the prior incident, should have told the plaintiff personally about the incident with the child, we cannot say that the defendant's conduct was deficient or negligent because he discussed the incident only with the plaintiff's mother, who was also the grandmother and part-time caretaker of the plaintiff's children and the matriarch of the household in which the plaintiff resided. We find that the defendant's action *200 in discussing the incident with Mrs. Pepper was sufficiently dispositive of any responsibilities he may have owed to this plaintiff.
Furthermore, there is no indication that this plaintiff would have heeded a beware of dog sign, given that he knew the dog was present in the yard, it was territorial, it was never let out of the backyard, and the usual custom for retrieving stray balls was to await the defendants' return home. Not only was the defendant's property fenced, but barbed wire topped a portion of the fence, thus clearly indicating that the defendant wanted privacy and visitors, therefore, should keep out. Additionally, given that the plaintiff himself described his actions as "unlocking" the gate, we do not see how making the gate more secure would have deterred this plaintiff from entering the defendant's yard. Finally, the lower courts and the plaintiff posited that the defendant could have chained his dog within the fenced yard or could have kept the dog inside the home; however, we believe that such actions would not have been reasonable under the facts of this case. Accordingly, based on our review of the record, we conclude that the plaintiff did not carry his burden of proving that the defendant failed to exercise reasonable care in trying to prevent any damages to his neighbors that might be caused by his dog.

CONCLUSION
For these reasons, we find that, to establish a claim in strict liability against a dog owner under La. Civ.Code art. 2321 as amended in 1996, the plaintiff must prove that his person or property was damaged by the owner's dog, that the injuries could have been prevented by the owner, and that the injuries did not result from the injured person's provocation of the dog. We further hold that, to establish that the owner could have prevented the injuries under Article 2321, the plaintiff must show the dog presented an unreasonable risk of harm. Because the lower courts erred in not requiring such a showing, we have reviewed the evidence de novo and have concluded that the defendant's dog under the facts of this case did not present an unreasonable risk of injury to the plaintiff and, therefore, that the plaintiff has failed to establish a claim in strict liability under La. Civ.Code art. 2321. Lastly, after reviewing the facts of this case, we conclude the plaintiff failed to carry his burden of proving that the defendant's conduct was negligent under Article 2321. Accordingly, the judgments of the district court and the court of appeal in favor of the plaintiff are reversed; judgment is granted in favor of the defendant and the plaintiff's claim for damages is dismissed with prejudice.
REVERSED.
NOTES
[1] Civil Code Article 2321 had provided in full:

The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment.
[2] La. Civ.Code. art. 2317 provides:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La. Civ.Code art. 2317.1, entitled:Damage caused by ruin, vice, or defect in things," and added by Acts 1996, 1st Ex.Sess., No. 1, § 1, eff. April 16, 1996, provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
[3] See Kent v. Gulf States Utilities Co., 418 So.2d 493, 498, n. 6 (La.1982); id. at 501, Dennis, J, concurring; Maraist & Galligan, Burying Ceasar, 71 Tul. L.Rev. at 344 ("[T]he Louisiana brand of strict liabilityrequiring a thing to have presented an unreasonable risk of harm, and presuming the custodian of the thing to have known of its defect-also was remarkably similar to some liability theories developed in American productsliability law. Thus, Louisiana's peculiar type of strict liability was a cross between civil law and American products-liability law. But, hybrid though it was, Louisiana's brand of strict liability was inspired, at least in part, by Louisiana's own civil-law tradition.") (footnote omitted).
[4] See Maraist & Galligan, Sect. 14-7, pp. 346-47; see also Burying Ceasar, 71 Tul. L.Rev. at 352.
[5] The legislative history shows that dogs were not originally an exception to the proposed requirement that the injured party must now establish fault or negligence on the part of the animal owner. During discussions of the Committee on Civil Law and Procedure, Representative Bowler expressed her concern that the liability of owners of animals would be decreased under the proposed bill. Professor Cheney Joseph proposed an amendment that would state that the owner of a dog would be strictly liable for injuries to person or properties caused by the dog which the owner could have prevented and which did not result from the injured person's provocation of the dog. Representative Bowler stated her concern was not with just dogs but all animals. Kimberly Wooten, the Governor's representative, explained that owners would still be answerable, but the plaintiff would have to prove that the owner knew or should have known that the animal would cause damage. The proposed amendment with respect to dog injuries was later adopted without further discussion. Minutes, H.B. No. 18, Civil Law and Procedure Committee, March 26, 1996.

Notably, an amendment to the bill that would include language "unless the vice or defect created an unreasonable risk of harm" was proposed in the same committee hearing, though not with respect to Article 2321, and then immediately rejected as possibly codifying the strict liability standard articulated by the Supreme Court. See Id. So the Committee, at least, understood that the concept of an unreasonable risk of harm was the standard to be used to determine strict liability in Louisiana. Therefore, in our view, we do not perceive any intent of the legislature either to increase or decrease the burden of a plaintiff in his pursuit of a strict liability claim against a dog owner, but to maintain the same standard, except with respect to provocation.
[6] Judge Downing dissented as to the fault allocation, believing that the plaintiff should have been assessed with 75% of the fault with the remainder to the defendant.