950 So.2d 92 (2007)
Jacalynne BECKER
v.
Stephen R. KEASLER and XYZ Insurance Company.
No. 2005-CA-1479.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 2007.
Soren E. Gisleson, Herman Herman Katz & Cotlar, LLP, New Orleans, LA, for Plaintiff/Appellee.
Kenny M. Charbonnet, Charbonnet Law Firm, L.L.C., New Orleans, LA, for Defendant/Appellant.
(Court Composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., and Judge ROLAND L. BELSOME).
MAX N. TOBIAS, JR., Judge.
This case arises from a dog bite suffered by the plaintiff, Jacalynne Becker ("Becker"), which occurred when a dog owned by the defendant, Stephen R. Keasler ("Keasler"), bit Becker while she was walking by his home in New Orleans. The *93 trial court awarded Becker $2,243.59 in special (medical) damages and $35,000.00 in general damages, plus costs and legal interest from the date of judicial demand. Keasler appeals the judgment of the trial court, asserting that Becker was negligent in attempting to pet the dog, which was restrained in his yard. For the following reasons, we affirm the judgment of the trial court.
On 3 November 2002, Becker, a college student, met several friends at a local establishment for Sunday brunch and to watch a football game. Around 10:00 a.m., Becker and three friends, including Sara Colis ("Colis"), arrived at the restaurant and parked around the corner on a residential street. While walking to the restaurant, Becker noticed Keasler's dog, a large Akita, at the fence bordering Keasler's property when she walked by.
After several hours at the restaurant with her friends, Becker left with Colis by foot to return to the car. While walking toward the car, Becker reached into her purse for her cell phone to call her friend who drove to the brunch so that they could leave. Becker testified that when she reached into her purse for her cell phone, she felt something latch onto her arm and pull her toward the fence. She realized it was a dog that had grabbed her; Colis was able to remove the dog from her arm. Becker and Colis waited for approximately twenty minutes for emergency assistance, and the fire department arrived with oxygen. She and Colis waited with her other friends for a few minutes longer, before finally driving to the emergency room at Touro Infirmary, a hospital.
Becker testified that she did not notice any aggressive behavior by the dog prior to being bitten, and did not see or hear the dog before it attacked her. She stated that she had her right arm extended in front of her with her elbow out while she reached for her cell phone. She described the fence bordering Keasler's property as an iron fence that abutted the sidewalk. She testified that from the sidewalk, the fence was approximately four feet tall. However, the lawn was raised higher than the sidewalk, so that from the other side, the fence only reached approximately three feet in height. Becker testified that no part of her arm or body ever crossed over the fence, and she did not attempt to pet the dog before it bit her.
Keasler was not home when his dog bit Becker, but his roommate, Roland Miller, Jr. ("Miller"), testified that he witnessed the bite. Miller testified that when Becker passed the house, he was sitting on a screened-in porch attached to Keasler's house and had a full view of the incident. According to Miller, Becker reached over the fence with her right arm, exclaiming "what a pretty dog" when the dog jumped up toward her face and bit her arm. He maintained that Becker was attempting to pet the dog, and that she reached her arm into the yard, provoking the dog. He testified that the dog was kept tied up in the yard, and that he had never bitten anyone before he bit Becker. Miller did admit under cross-examination, however, that the dog bit another person on the face sometime after it bit Becker, and that the dog was euthanized as a result. Miller testified that the dog had been known to charge the fence and bark at passing children, who would frequently provoke the dog. He further testified that the dog was tied up because Keasler did not want him near the fence where he might be antagonized to the point of possible hurting someone. However, he also testified that on the morning in question, the dog was able to come within a foot of the fence, "maybe closer if he's really going for it."
Following Miller's testimony, the trial court judge issued a ruling from the *94 bench, and found that Louisiana Civil Code article 2321, "which imposes strict liability on dog owners for injuries caused as a result of dog bites, is applicable." The trial court noted the applicability of the Louisiana Supreme Court decision Pepper v. Triplet, 03-0619 (La.1/21/04), 864 So.2d 181, 200, and specifically found that it was uncontested that Keasler's dog bit Becker; that the dog bite was unprovoked; and that the height and design of the fence and the rope were inadequate to restrain a dog as large as Keasler's. Finally, the trial court found Keasler to be solely at fault for "failing to provide proper precautions and safety to prevent passers-by from encountering the dog, who had a propensity for aggression and a propensity to bite." The trial court expressed doubt that the dog had never bitten anyone before it bit Becker, and further noted outrage that Miller apparently witnessed the event, but did not offer to help Becker. Although the trial court found Keasler strictly liable under article 2321, it did not expressly determine whether the dog posed an unreasonable risk of harm before making its determination.
Keasler appealed the judgment of the trial court, assigning four errors. First, he asserts that the trial court erred in finding him strictly liable for the actions of his dog without determining whether the dog posed an unreasonable risk of harm. Similarly, he also asserts that the trial court misapplied the law by failing to apply an unreasonable risk analysis to the facts of this case. Next, Keasler takes issue with the factual findings of the court, and in particular its finding that the dog had bitten other individuals before biting Becker, and not after.
Liability for injuries caused by a pet is governed by Civil Code article 2321, which provides:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
However, a plaintiff may prevail under a claim in negligence if he or she shows that the dog's owner failed to exercise reasonable care. Id.
Because Keasler assigns an error of law to the trial court, we examine the merits of the case de novo. However, to the extent the legal conclusions reached by the trial court were based upon credibility determinations, we review those determinations under a manifest error/clearly wrong standard. Rosell v. ESCO, 549 So.2d 840 (La.1989). If, after a review of the record on appeal, we determine that the credibility determinations made by the trial court are reasonable, we are bound to uphold them, even in the face of conflicting testimony. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733.
In the case sub judice, we note that the trial court lent credibility to Becker's version of events, and not to the version put forth by the defendant. The trial court found the defendant's version of events inconsistent, noting that it did not believe that Becker's injury to her upper arm was consistent with her reaching into the yard *95 to pet the dog, as described by Miller. Further, the court was troubled that Miller did not appear by his testimony to have offered Becker aid. Keasler specifically takes issue with this finding, as it is not supported by the testimony in the record. We note that the record is devoid of testimony regarding Miller's actions following the dog bite, and from the lack of testimony, the trial court seems to have inferred that Miller stood by and ignored Becker's distress. However, the court notes that it rejected Keasler's version of events "mainly for the reason that the injuries are inconsistent with the way the defendant and Mr. Miller say the accident happened." Although we find that the trial court committed factual error in finding that Miller did not offer assistance to Becker, we do not find that this error invalidates the trial court's credibility determination, insofar as it was not the sole factor in the determination. Further, any evidence in the record does not sufficiently or directly controvert the version of events put forth by Becker.
Next, we look to whether the factual findings made by the trial court are sufficient to support a finding of strict liability as a matter of law. The findings of fact that are supported by the record on appeal that are germane to this issue are: Keasler's dog bit Becker; Becker did not provoke the dog; the dog was restrained by a rope in a rather large yard, but was still able to reach the fence; the fence was only four and one-half feet tall and had six-inch gaps between its bars; and, Keasler's dog had a history of aggression toward passers-by, which was the reason Keasler retrained the dog with a rope.
In Pepper v. Triplet, 03-0619, p. 29 (La.1/21/04), 864 So.2d 181, 200, the Louisiana Supreme Court examined the standard set forth in Civil Code article 2321 and held that in order to establish a claim in strict liability against a dog owner, a plaintiff must prove that (1) he or she sustained injury to his person or property; (2) the injuries could have been prevented by the owner; and (3) the injury did not result from the provocation of the dog by the victim. The Court further held that in order to establish that a dog owner could have prevented the injury sustained by the victim, a plaintiff must establish that the dog presented an unreasonable risk of harm.
In particular, the Court noted that a plaintiff must establish:
that the risk of injury outweighed the dog's utility such that is posed an unreasonable risk of harm. If the animal posed an unreasonable risk of harm, then the owner will be presumed to be at fault, because he failed to prevent an injury he could have prevented, and he will be held strictly liable for an injury caused by his dog, unless he can show that the injury was due solely to the fault of a third party unattributable to him or to a fortuitous event, or, as Article 2321 now provides, the plaintiff fails to establish that the injuries did not result from the injured person's provocation of the dog.
Id. at p. 19, 864 So.2d at 194. The Court noted that in determining whether a dog owner's conduct constituted an unreasonable risk of harm, it must weigh the individual right of the dog owner with the "risk and gravity of harm" to the public. Id. at p. 21, 864 So.2d at 195-96. This is necessarily a fact-sensitive determination.
Keasler points out that the Court found that the defendant in Pepper was not strictly liable because the dog was "completely enclosed" in a fence and that the plaintiff actually entered the defendant's fenced-in property before being bitten. Keasler maintains that because he restrained his dog both with a rope and *96 behind a fence, the only way Becker could have been bitten would have been if she reached into his yard, provoking the dog. However, the evidence in the record indicates that although the dog was tied up, it was able to come very close to the fence, by Miller's own estimation.[1] Photographs of Keasler's yard were entered into evidence, and we note that the yard is large, with ample room to restrain a dog such that it posed no risk to passers-by. Also, the photographs of the fence are consistent with Becker's estimation of its height. Coupled with Miller's testimony that the dog had aggressively approached passers-by (neighborhood children) at the fence in the past, we find that the manner in which the dog was restrained constituted an unreasonable risk of harm to the public. Given the close proximity within which the dog was able to approach the fence, and the dog's aggressive nature, the design of the fence was inadequate to protect the public.
For the foregoing reasons, we find that Keasler is strictly liable to Becker for her injuries under Civil Code article 2321 and the standard set forth in Pepper, supra. Although the trial court committed factual error in determining that the dog had bitten someone before it bit Becker and further in determining that Miller did not offer assistance to Becker, those determinations are not essential to the ultimate issues of liability before it. Further, although the trial court should have made a determination as to whether the dog posed an unreasonable risk of harm, we find that the evidence in the record supports the ultimate finding of strict liability on the part of Keasler. Therefore, the errors committed by the trial court were harmless errors and the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] We note that no objective evidence in the record establishes the exact length of the rope, or whether it was possible for the dog to have lunged over the fence toward Becker, as the maintains. In the absence of evidence to discredit her testimony, we are required by the manifest error/clearly wrong standard to accept the trial court's determination of her veracity.