NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-884

DEMETRIOUS R. FRAZIER

VERSUS

LUKE A. DIFULCO, JR., ET AL.

**********

APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 127,110
HON. W. PEYTON CUNNINGHAM, JR., CITY COURT JUDGE *PRO TEM*.[1]

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and James T. Genovese, Judges.

AFFIRMED.

COOKS, J., dissents and assigns written reasons.

Malcolm X. Larvadain
Law Offices of Malcom X. Larvadain
626 Eighth Street
Alexandria, LA 71301
(318) 445-3533
COUNSEL FOR PLAINTIFF/APPELLANT:
      Demetrious R. Frazier

---

[1] Judge W. Peyton Cunningham, Jr. presided in this litigation pursuant to appointment by the Louisiana Supreme Court.

**Paul M. Lafleur**
**Stafford, Stewart & Potter**
**P. O. Box 1711**
**Alexandria, LA 71309**
**(337) 487-4910**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Luke A. Difulco, Jr.**
    **Laura Mayeux Difulco**
    **Daniel Difulco**

**PETERS, J.**

The plaintiff, Demetrious R. Frazier, appeals the trial court's denial of his motion for a new trial and the granting of the motion to strike filed by the defendants in this matter, Luke A. Difulco, Jr., Laura Mayeaux Difulco, and Daniel Difulco. For the following reasons, we affirm the trial court's judgment in all respects.

## DISCUSSION OF THE RECORD

On February 11, 2013, a dog owned by the defendants bit Mr. Frazier as he was performing his duties as a meter reader for the City of Alexandria, Louisiana. The incident occurred when Mr. Frazier entered a fenced yard at the defendants' 5213 Raphael Drive residence in Alexandria.[2] Mr. Frazier's suit for damages against the defendants went to trial on November 21, 2014, and after hearing the evidence presented, the trial court issued oral reasons for judgment stating the following:

> [I]t is the holding of the Court that Demetrious R. Frazier assumed the risk of whatever damage would be done to him by going into the gate at such a time that it was dangerous for him to do so when in fact the son, Mr. Daniel Difulco, had offered to eliminate the danger involved.

On December 4, 2014, the trial court executed a written judgment dismissing Mr. Frazier's demands against the defendants. Mr. Frazier requested that the trial court issue written reasons for judgment. On December 22, 2014, in response to Mr. Frazier's request, the trial court filed the following written reasons:

> This is a dog bite case emanating from an incident on February 11, 2013.
>
> Plaintiff is a meter reader employed by the City of Alexandria to read meters electronically with a hand held battery powered device in residential neighborhoods in the city.

---

[2] Luke A. Difulco, Jr. and his wife, Laura Mayeaux Difulco, own the property where Mr. Frazier was bitten; and their adult son, Daniel Difulco, was at the residence visiting family on the day of the incident.

Defendants are the owners and occupants of a home located in a city neighborhood whose water and electrical meters plaintiff was going to read, all within the scope of his employment. Plaintiff has received [workers'] compensation and all medical bills have been paid.

Located at the far end of defendant's [sic] paved driveway is a chain link fence and gate which encloses the backyard, the meters in question, and a separate dog pen kennel which is enclosed within the backyard.

On the date in question, as plaintiff approached the closed gate to the backyard he was met by the defendants['] two Chesapeake [Bay] Retriever dogs that were barking from the backyard. Inside the residence, the 24 year old son of the defendant heard the noise and went out the back door with a 2 year old niece to see what had caused the barking dogs, described as playful family pets that had no history of harming anyone. He saw the plaintiff on the street side of the gate and talked with him from the backyard side of the gate.

At this time the plaintiff had three choices:

1. Not to go in the backyard and to use the electronic reader in his hand to "code", [sic] that is, to estimate the amount of water and electricity used thereby reference to an average of the defendant's [sic] previous bills.

2. Not to go into the backyard until the owners['] son removed the dogs from the immediate area and secured in the dog kennel, which he offered to do while plaintiff still stood at his safe location on the opposite side of the gate.

3. Wait for instructions from his supervisor who was available by radio.

When the son offered to secure the dogs in their enclosed kennel the plaintiff, instead of responding, opened the gate and as he stepped toward one of the animals bit him on the hand causing two puncture wounds near the index and ring finger knuckles on the hand.

The Court finds that the plaintiff was grossly negligent in leaving his place of safety and going thru [sic] the gate into the backyard when it was obviously unsafe to do so; in not waiting in his safe location until the dogs were kenneled; [i]n assuming by his actions 100% of the risk of being bitten by the barking Chesapeake [Bay] Retriever; which negligence acts as a bar to his request for monetary damages from the defendants.

Plaintiff was covered by [workers'] compensation and all related medical expenses have [been] paid, according to trial counsel. Plaintiff's claim here is dismissed at his costs.

On January 7, 2015, Mr. Frazier filed a motion for new trial wherein his sole claim for relief was that "[p]ursuant to Louisiana Code of Civil Procedure Article 1972 (1) the plaintiff files this Motion for New Trial on the grounds that the judge reached a verdict that is contrary to the law and evidence." That same day, Mr. Frazier also filed the memorandum in support of his motion for new trial with attachments. On February 9, 2015, the defendants filed a motion to strike evidence attached to the memorandum addressing an incident report and bench warrant issued against Daniel Difulco in a totally unrelated matter.

The trial court held a hearing on both motions on February 19, 2015. At the end of the hearing, the trial court granted the defendants' motion to strike and took the new trial motion under advisement. On March 3, 2015, the trial court issued written reasons confirming the previous oral grant of the motion to strike and rejecting the motion for new trial. In those reasons for judgment, the trial court stated the following:

> These motions were heard in open court on February 19, 2015. The Motion to Strike was denied at that time and that ruling is affirmed here.[3]

> As to the Motion For New Trial, plaintiff argues that in the initial trial the Court ruling that plaintiff assumed the risk of being injured was legally incorrect. We now correct that.

> This Court now sets that finding aside and finds that on a comparative negligent basis the plaintiff is 100% negligent and the defendants zero percent negligent.

> The Court notes that plaintiff's argument at these motions deviates substantially from the true facts of this case in several important aspects. To make sure that the record is correct, the Court reiterates it's [sic] findings of fact as follows:

> Plaintiff, a city meter reader, approached a hurricane type fence gate at the end of defendants['] paved driveway. He was met there by defendant's [sic] two retriever dogs who were barking. These animals were seven years old, family pets of good nature that had never been

---

[3] Given the record as a whole, we construe this as a typographical error.

known to bite any one [sic] nor exhibit dangerous propensities. Hearing the barking, a defendant family member and a two year old child met plaintiff at the gate while plaintiff was still on the side opposite the animals. The offer to put the dogs in their backyard kennel prior to entering the yard was turned down. It is important to note here that plaintiff had these choices:

1. Request directions on his radio from his supervisor.

2. Request help from his more experienced co-worker who was present.

3. Leave the meter un-read and "code" it with the electronic meter reading device he had in his hand.

4. Enter the backyard after the dogs had been placed in the kennel.

5. Enter as he did.

The Motion For A New Trial is denied. All costs are assessed to plaintiff.

The trial court executed a written judgment granting the motion to strike and denying the motion for new trial on April 2, 2015, and Mr. Frazier perfected this appeal thereafter. In his appeal, Mr. Frazier asserted the following three assignments of error:

1. The Honorable Trial Court committed manifest error in failing to grant appellant's request for a new trial by rescinding its prior ruling and issuing another ruling using the correct legal theory.

2. The Honorable Trial Court committed manifest error in finding the appellant was solely responsible for his injuries under the theory of comparative fault.

3. The Honorable Trial Court committed manifest error in discounting the testimony of appellant.

## OPINION

The testimony surrounding the incident is in conflict. Mr. Frazier testified that on the morning of February 11, 2013, he was assigned an unfamiliar route, and

4

was informed by his supervisor that he would be training a new employee.[4] He testified that he approached the fenced area at the defendants' home; he observed no dogs, tracks, bowls, or other evidence of a dog being present, and opened the gate and walked into the driveway toward the electricity meter.[5] According to Mr. Frazier, as he reached the meter, a large black dog came on the scene and ran at him. A second dog appeared on the scene, thereby impeding his escape route to the gate, and before he could exit the fenced area, one of the dogs bit him on the right hand. Mr. Frazier testified that only after he had been bitten by the dog did Daniel Difulco exit the house and gain control over the dogs. Mr. Difulco then administered first aid to Mr. Frazier's wound.

Luke Difulco testified that the dogs involved in the February 11, 2013 incident were a ten-year-old black lab and a seven-year-old Chesapeake Bay Retriever. Both dogs had been with the family since their birth, and there were no biting incidents involving either dog before the incident with Mr. Frazier. He did not consider either dog to be aggressive, and they were perfectly comfortable around company. Still, he acknowledged that both dogs would bark when a stranger came through the gate into the yard. He testified that he had a covered kennel in the yard where he would place the dogs while food was being consumed in the yard, or when the weather was bad. Mr. Difulco had no dog warning signs because he felt them unnecessary. Only Daniel, Natalie, the Difulcos' daughter, and Natalie's minor daughter were present at the residence on the date of the incident.

Daniel Difulco (hereinafter referred to as "Daniel" to differentiate him from his father) testified that at approximately 10:00 a.m. on February 11, 2013, he

---

[4] The trainee, who did not testify at trial, was identified in the record as "Clifford Lee."

[5] Mr. Frazier testified that as he entered the fence to read the electricity meter, Mr. Lee went to the edge of the street outside the fence to read the water meter.

heard the dogs barking. When he went to investigate, he entered the fenced-in yard through the back door of the residence and observed a man outside the gate. Daniel testified that he asked the man if he was there to read the meter and whether it was necessary to "put the dogs up." According to Daniel, the man responded he was not going past the gate and that it would not be necessary to do anything with the dogs. Daniel testified that he then returned to the back of the house with the dogs closely following him. After he entered the garage area and started to open the back door to the residence, he heard a man scream and he turned to see the dogs barking and growling at Mr. Frazier. Daniel screamed at the dogs, and when he observed that Mr. Frazier had been bitten, he administered first aid to the wound.

When questioned concerning why he offered to lock the dogs up in the first place, Daniel responded that "if you have two barking dogs sometimes it makes a man uncomfortable to go into their territory." He stated that he was not, at the time, concerned for the man's safety, but merely his comfort level. In fact, this was the first time the dogs exhibited the behavior toward even a stranger entering the yard.

In resolving these two versions of what occurred on February 11, 2013, the trial court stated the following at trial:

> I accept the testimony of Daniel Difulco as being reliable, trustworthy and worthy of belief. I also accept the testimony of Mr. Luke Difulco that he had never had these dogs attack anybody, they were used to barking when somebody intruded into their area and I can't explain why Mr. Frazier or the second employee would tell Daniel Difulco that they weren't, not gonna come into the backyard through the gate to read the gas and electric meter and then to do so.

### *Assignment of Error Number I*

In his motion for new trial, Mr. Frazier relied solely on La.Code Civ.P. art. 1972(1) which provides that "[a] new trial shall be granted . . . [w]hen the verdict or judgment appears clearly contrary to the law and the evidence." At the hearing

6

on the motion, Mr. Frazier argued that the trial court used an incorrect legal theory (assumption of the risk) in rendering its judgment. Specifically, Mr. Frazier noted that the doctrine of assumption of the risk has been replaced by the doctrine of comparative fault. The trial court responded to this argument in its March 3, 2015 written reasons for judgment rejecting the motion for new trial, by stating the following:

> As to the Motion For New Trial, plaintiff argues that in the initial trial the Court ruling that plaintiff assumed the risk of being injured was legally incorrect. We now correct that.

> This Court now sets that finding aside and finds that on a comparative negligent basis the plaintiff is 100% negligent and the defendants zero percent negligent.

Mr. Frazier now argues that it was manifest error to correct the theory of the case without granting a new trial.

We find that Mr. Frazier's argument on this point ignores the difference between reasons for a judgment and the judgment itself. Louisiana Code of Civil Procedure Article 1951 addresses the amendment of a final judgment and provides:

> On motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment, but not its substance, or to correct errors of calculation. The judgment may be amended only after a hearing with notice to all parties, except that a hearing is not required if all parties consent or if the court or the party submitting the amended judgment certifies that it was provided to all parties at least five days before the amendment and that no opposition has been received.

In this case, the trial court did not alter the phraseology of the judgment or correct any errors of calculation. Instead, it amended its reasons for judgment. Louisiana Code of Civil Procedure Article 1918 makes it clear that reasons for judgment and a final judgment are separate documents. Additionally, the supreme court held in *Bellard v. American Central Insurance Co.*, 07-1335, 07-1399, p. 25 (La. 4/18/08), 980 So.2d 654, 671, that a "district court's oral or written reasons for

judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment." Further, the supreme court stated in *Greater New Orleans Expressway Commission v. Olivier*, 02-2795, p. 3 (La. 11/18/03), 860 So.2d 22, 24, that "[a]ppeals are taken from the judgment, not the written reasons for judgment." And finally, in *Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586, pp. 77-78 (La. 4/1/11), 61 So.3d 507, 572, the supreme court stated:

> Judgments are often upheld on appeal for reasons different than those assigned by the district judges. "The written reasons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed...." *State in the Interest of Mason*, 356 So.2d 530, 532 (La.App. 1 Cir.1977).

We find no merit in Mr. Frazier's argument that the trial court's change of the theory of the judgment mandates a new trial. Thus, we find no merit in this assignment of error.

### Assignments of Error Numbers II and III

In his second assignment of error, Mr. Frazier argues that the trial court committed manifest error in finding him solely responsible for his injuries and in not assessing any comparative fault to the defendants. In his third and final assignment of error, Mr. Frazier argues that the trial court committed manifest error in finding Daniel's testimony more credible than his own. Because these assignments of error overlap, we will consider them together.

Although Mr. Frazier's appeal addresses the validity of the judgment on the motion for new trial, his arguments amount to an appeal of the judgment on the merits. This court has addressed such a situation in *Dietz v. Superior Oil Co.*, 13-657, pp. 3-4 (La.App. 3 Cir. 12/11/13), 129 So.3d 836, 839-40, and in doing so, stated the following:

> A trial court's decision to deny a motion for new trial is an interlocutory judgment subject to appeal for abuse of discretion only upon a showing of irreparable harm. *Dural v. City of Morgan City*,

449 So.2d 1047 (La.App. 1 Cir.1984). However, "where a motion for appeal refers by date to the judgment denying a motion for new trial, but the circumstances indicate that the appellant actually intended to appeal from the final judgment on the merits, the appeal should be maintained as being taken from the judgment on the merits" *Id.* at 1048 (citing *Smith v. Hartford Accident and Indemnity Company*, 254 La. 341, 223 So.2d 826 1969); *Fruehauf Trailer Company v. Baillio*, 252 La. 181, 210 So.2d 312 (1968); *Kirkeby–Natus Corporation v. Campbell*, 250 La. 868, 199 So.2d 904 (1967)).

Based on Mr. Frazier's memorandum to this court and the record before us, we will treat these assignments of error as though they were an appeal of the judgment on the merits.

The disputes set forth in these assignments of error are factual in nature, and the standard of review of a trial court's findings of fact has remained the same since the supreme court enunciated that standard in *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (footnote omitted) (citations omitted), which stated:

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues *de novo*.

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit

the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

With regard to the liability imposed on the owner of a dog who causes damages to another, La.Civ.Code art. 2321 provides:

> The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that the animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Mr. Frazier recognizes the manifest error/clearly wrong standard as applicable to the factual determinations of the trial court, but argues that the trial court failed to apply the burden of proof laid out by the supreme court in *Pepper v. Triplet*, 03-619 (La. 1/21/04), 864 So.2d 181. In *Pepper*, the supreme court stated the following:

> [T]o establish a claim in strict liability against a dog owner under La. Civ.Code art. 2321 as amended in 1996, the plaintiff must prove that his person or property was damaged by the owner's dog, that the injuries could have been prevented by the owner, and that the injuries did not result from the injured person's provocation of the dog. We hold that, to establish that the owner could have prevented the injuries under Article 2321, the plaintiff must show the dog presented an unreasonable risk of harm.

*Id*. at 184.

In the matter before us, it is undisputed that Mr. Frazier sustained an injury caused by the defendants' dog, and there is no evidence that he provoked the dog. What the trial court found missing was proof that the defendants could have prevented Mr. Frazier's injuries. The trial court reached this conclusion by

10

assessing the credibility of the witnesses and finding Daniel's testimony credible, implicitly finding Mr. Frazier's testimony not credible.

In accepting Daniel's version of the events of February 11, 2013, the trial court factually concluded that Mr. Frazier informed Daniel that he was not going to enter the yard and, therefore, it was unnecessary for Daniel to place the dogs in the kennel. The trial court factually concluded that Mr. Frazier's action in going into the yard after his conversation with Daniel, and without Daniel's knowledge, constituted the sole cause of Mr. Frazier's injuries. This finding is supported by the record, and we do not find it to be manifestly erroneous or clearly wrong.

We find no merit in either of Mr. Frazier's final two assignments of error.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court dismissing the claims of the plaintiff, Demetrious R. Frazier, against the defendants, Luke A. Difulco, Jr., Laura Mayeaux Difulco, and Daniel Difulco. We assess all costs of this appeal to Demetrious R. Frazier.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

**DEMETRIOUS R. FRAZIER**

**VERSUS**

**LUKE A. DIFULCO, JR., ET AL.**

**COOKS, J., dissenting.**

I respectfully dissent from the majority's decision to affirm the judgment of the Alexandria City Court in this matter. As set forth in the majority opinion, there is no dispute that Plaintiff, while in the performance of his job duties as a meter reader for the City of Alexandria, was bitten by Defendant, Luke Difulco's dog. After correcting its erroneous reliance on "assumption of risk," the city court eventually concluded Plaintiff was 100% at fault in causing the accident. In doing so, the city court found the testimony of Defendant's son, Daniel Difulco, more credible than that of Plaintiff. This evaluation was made despite several inconsistencies and omissions in Daniel's testimony that make his credibility dubious at best.

Daniel testified on the date of the incident, he heard the dogs barking. When he went into the yard to investigate, he saw a man outside the gate. According to Daniel, he testified that he asked the man if he was there to read the meter and whether it was necessary to "put the dogs up." Daniel stated the man told him it would not be necessary to do anything as he was not going past the gate. Daniel then testified he went back into the house, and did not return until hearing a man scream. He then helped administer aid to the victim of the dog bite.

Despite allegedly speaking with Defendant, and then helping treat his wound, Daniel was unable at trial to clearly establish or deny that he spoke with Defendant. His testimony was as follows:

Q. Okay, and you contend [Plaintiff] told you that he was not going to read the meter or wasn't gonna go around the gate?

BY MR. LAFLEUR (Defendant's attorney): Objection Your Honor. I do not believe that Mr. Difulco identified who told him that.

BY MR. LARVADAIN (Plaintiff's attorney): Okay.

BY THE COURT: Objection sustained.

Q. Okay, who told you that they were not gonna go past the gate?

A. One of the gentleman who was in the front yard.

Q. The gentleman who is to my left, was he the one who told you that?

A. I cannot, I cannot answer that to tell you the truth. I can't, I can't tell you if that was him of Mr. Lee who he was training on that day. I can't honestly answer if it was him or it was Mr. Lee that said it.

It strains the bounds of reasonableness to conclude that Daniel would have been unable to remember if the man he was treating for a wound to his hand, was the man he had just allegedly spoken to only a few minutes prior. This glaring omission, to my view, calls into question his entire testimony.

Further, Daniel's testimony was contradicted by Plaintiff who testified that he never spoke with anyone prior to entering the backyard. Daniel maintained he was assured that no one would need to enter the yard to read the meter. I find it implausible to conclude that Plaintiff would have assured Daniel he did not need to enter in to the backyard, and then enter anyway after refusing Daniel's offer to secure the dogs. Likewise, it is equally implausible that Mr. Lee, who was training with Plaintiff, would have told Mr. Difulco it was not necessary to enter into the yard, but not convey that fact to Plaintiff. The fact is the meter, which both workers needed to gain access to, was located in the backyard behind the gate.

The city court judge specifically noted he "accept[ed] the testimony of Daniel Difulco as being reliable, trustworthy and worthy of belief." Considering the inconsistencies in Daniel's testimony, as set forth above, I find this credibility determination to be manifestly erroneous.

Under *Pepper v. Triplet*, 03-619 (La. 1/21/04), 864 So.2d 181, 184, the supreme court stated to "establish a claim in strict liability against a dog owner . . ., the plaintiff must prove that his person or property was damages by the owner's dog, that the injuries could have been prevented by the owner, and that the injuries did not result from the injured person's provocation of the dog." The majority correctly notes it was undisputed that Plaintiff sustained an injury caused by Defendants' dog and there was no evidence that he provoked the dog. The majority, however, concludes the trial court found there was no proof that Defendants could have prevented Plaintiff's injuries, and acknowledges as the basis for this conclusion that it found Daniel's testimony credible. For the reasons set forth above, I disagree. Moreover, I also find there were measures that could have been taken by Defendants that could have prevented Plaintiff's injuries. Defendants testified they had no "Beware of Dog" signs on the fence or any kennel on the property in which to house the dogs. Defendants had exclusive control over the property and chose to erect a fence that enclosed the meter box.

For the above reasons, I find the lower court manifestly erred in finding Plaintiff solely at fault for the injuries he incurred.