## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-283

**ANDREW JOHNSON AND RHONDA JOHNSON**

**VERSUS**

**ANTHONY BATTISE AND ANGELA BATTISE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C2018-289
HONORABLE JUDI F. ABRUSLEY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GARY J. ORTEGO**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sharon Darville Wilson, Gary J. Ortego, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Michael Scott Harper**
**Charles Sam Jones Law, LLC**
**105 North Stewart Street**
**DeRidder, LA 70634**
**(337) 436-5532**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Anthony Battise**
    **Angela Battise**

**Cody Vidrine**
**Loftin & Leblanc, LLC**
**410 East College Street, Suite A**
**Lake Charles, LA 70605**
**(337) 310-4300**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Andrew Johnson**
    **Rhonda Johnson**

**ORTEGO, Judge.**

This is a personal injury case wherein plaintiffs allege their neighbor /defendants' 4-H hog escaped its fenced enclosure and caused damages to them. Defendant animal owners sought a motion for summary judgment to dismiss plaintiffs' case. The trial court granted defendants' motion finding that plaintiffs could not establish a genuine issue of material fact that defendants knew or should have known of the danger posed by the animal and that the defendants could have but failed to take reasonable measures to prevent neighbors' injury under duty-risk analysis pursuant to La.Civ.Code art. 2321. Plaintiffs appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of August 29, 2017, Andrew Johnson (Johnson) was on his property located next to the homestead/farm owned by Tony and Angela Battise (the Battises). Johnson alleges that the 4-H hog owned by his neighbors, the Battises, escaped its enclosure, attacked, and struck him, knocking him to the ground causing injuries to his neck, back, and legs. According to Johnson's affidavit, prior to the incident on August 29, 2017 (1) multiple farm animals owned by the Battises had come onto his property without his permission; (2) Johnson had informed the Battises of the animals previously coming onto his property; (3) the Battises failed to maintain proper fences to enclose their property to prevent their animals from coming onto Johnson's property; and (4) the Battises' property was not entirely fenced in prior to the incident.

On June 28, 2018, Johnson and his wife, Rhonda (collectively the Johnsons) filed suit against the Battises for their damages stemming from the August 29, 2017,

incident. On February 1, 2022, the Johnsons filed a motion for summary judgment asserting that there were no genuine issues of material fact in dispute regarding whether the Battises were liable for the damages caused to them by the 4-H hog incident. The trial court denied this motion on May 31, 2022.

Thereafter, on July 18, 2022, the Battises filed their motion for summary judgment asserting that pursuant to La.Civ.Code art. 2321 the Johnsons could not establish a genuine issue of material fact in dispute, as to the Battises having actual or constructive knowledge of the danger posed by 4-H hog, and the Battises could have but failed to take reasonable measures to prevent injury. On February 13, 2023, the trial court granted the Battises' motion and dismissed the Johnsons' suit against the Battises. On March 13, 2023, the Johnsons appealed the judgment to this court.

## LAW AND DISCUSSION

### *Standard of Review*

The matter before us was dismissed by a granted motion for summary judgment.

> Appellate courts review summary judgments *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of Louisiana State University*, 591 So.2d 342, 345 (La.1991). A court must grant a motion for summary judgment "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA–C.C.P. art. 966(B).

*Greemon v. City of Bossier City*, 10-2828, p. 6 (La. 7/1/11), 65 So.3d 1263, 1267.

2

# ASSIGNMENT OF ERROR

The Johnsons contend, in their sole assigned error, that the trial court improperly granted the Battises' motion for summary judgment. The law detailing which party has what burden of proof in a motion for summary judgment is well established.

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

Here, the Battises are the movants. However, at trial, the Battises do not bear the burden of proof on the personal injury claims of the Johnsons. Thus, by law, the Battises can point out the lack of support for an element of the Johnsons' claim and have the burden of proof shift to the Johnsons to prove a material fact exists on that element for summary judgment.

## I.     *Animal Owner Liability under Louisiana Civil Code Article 2321*

The Johnsons' personal injury claim of negligence by an animal's owner is governed by La.Civ.Code art. 2321. Louisiana Civil Code Article 2321 states:

> The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. . . . Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

3

"[T]he basis of liability for animal owners (except dogs) is now negligence." Frank L. Maraist & Thomas C. Galligan, Jr., *Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law*, 71 Tul. L.Rev. 339, 353 (1996); *Pepper v. Triplet*, 03-0619, p. 13 (La. 1/21/04), 864 So.2d 181, 191, noting that "Our courts of appeal, as well as various commentators, have noted that the 1996 revision results in an ordinary negligence standard for owners of animals, except dogs" and citing Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law, § 14-7 (1996)).

Therefore, whether an owner is liable for injury caused by his or her animal, excluding dogs, application of duty-risk analysis is appropriate. In application of duty-risk analysis, the plaintiff must show under La.Civ.Code art. 2321 that the animal's owner knew or should have known of the danger posed by the animal, ***and*** that the owner could have but failed to take reasonable measures to prevent injury. *Kasem v. State Farm Fire and Cas. Co.,* 16-217 (La.App. 1 Cir. 2/10/17), 212 So.3d 6.

*II. Foreseeability and Liability*

In this case, the Battises point out that there is no evidence in the record that tends to prove the Battises knew or should have known that the 4-H hog had any vicious propensities or constituted an unreasonable risk of harm and, as such, its behavior, i.e., striking Mr. Johnson, could possibly cause someone personal injuries. Therefore, the Battises assert that the burden was then shifted to the Johnsons to show a material fact exists on this foreseeability element and that the Johnsons failed to carry that burden. We agree.

The only evidence in the record regarding the 4-H hog's behavioral history is testimony from the Battises. They both testified that the animal was akin to a pet,

4

gentle, sweet, and friendly.  In her sworn deposition testimony, Angela Battise described their hog as follows:

A.     [] He was a[n] old show hog.

Q.     . . . Now, I want you to do your best and describe the hog to me.

A.     Oh, he was so sweet.  He - - he was very friendly.

. . . .

A.     I mean, he was a pet.  I mean, Brett [her then 15–16-year-old son] could ride his back.  I mean, Brett - - he would lay down.  Bret could lay down with him.

. . . .

A.     You know, like I said, he was a pet.  Anybody could just - - he'd walk up to you and just let you play with him.

Thereafter, during her deposition, Ms. Battise was again questioned regarding the 4-H hog's behavioral history as follows:

Q.     - - Ms. Battise.  This hog - - in the entire time period that y'all owned the hog, had it ever been aggressive or danger towards people in any way?

A.     No, sir, he wasn't.  He was so sweet.

Q.     Even an accident?

A.     No, Sir.

Q.     Had he ever charged at or run into anybody and knocked them down before?

A.     No, sir.

Q.     Had anybody ever told you before that the hog had been dangerous or warned you that the hog was a hazardous animal [in any way?]

A.     No, sir.

Q.     [] Had Mr. Johnson ever complained to you about the hog being dangerous or aggressive?

A.     No, sir.

5

Q. Before this incident, did you have any reason to believe, based on what you had seen or what anybody had ever told you, that this hog was dangerous to people or aggressive in any way?

A. (Witness shakes head negatively.)

Angela Battise's sworn testimony regarding the demeanor of the 4-H hog is corroborated by that of her husband, Tony Battise. He first described the hog as "gentle." Thereafter, Mr. Battise testified as follows:

Q. Tony, this hog that Brett had at the time, have you ever witnessed that hog being aggressive towards anyone, a person in any way?

A. No, sir.

Q. Was it a pretty tamed hog?[]

A. Yes, sir.

Q. [You could go in the pen with it] and move it around?

A. Pretty much you could touch it, rub it. I mean, he wasn't aggressive at all.

Q. Was that pretty much consistent with what a show hog would be like?

A. Yes, sir. You can lead it around and pretty much lead them around with a piece of stick[.]

. . . .

Q. Has anyone ever told you in the past, your neighbor or any of the kids, that that hog had been aggressive and charged anyone?

A. No, sir.

Q. Had the hog ever hurt anyone just [] because of its weight and size [by] accident before that you know of?

A. No, sir.

The Johnsons counter this argument by asserting that generally large farm animals, when they escape their enclosures, are inherently dangerous. As such, it imputes knowledge to the owner that the animal's behavior could cause damage and

6

that, as owners, they are responsible for any damages that their animal causes. Thus, according to the Johnsons, the Battises, as owners of this 300–400 pound 4-H hog, are liable for any damages regardless of whether the animal's potential for dangerous behavior was known or should have been known by the Battises.

In support of their argument, the Johnsons cite *Kasem*, 212 So.3d 6. According to the Johnsons, *Kasem* stands for the premise "that cattle, in general, could get excited and/or skittish or frightful over a number of different things," and, as such, summary judgment is precluded because a genuine issue of material fact exists as to liability regardless of whether the animal previously showed vicious propensities. *Kasem*, 212 So.3d at 17.

We find this argument proposed by the Johnsons to be unconvincing. The Johnsons' citation of the language mischaracterizes the animal owner's testimony as a finding by our sister court in the First Circuit. The quote above is from the testimony of the cow's owner. In *Kasem*, the First Circuit found that this testimony along with *other* testimonies and the circumstances surrounded the corralling of the loose cow created a question of material fact whether the owner knew that that particular cow, in those particular circumstances, could be dangerous. Our reading of *Kasem,* and this quote, does not stand for the proposition that the First Circuit found summary judgment is precluded because a genuine issue of material fact exists, as to liability, regardless of whether the large farm animal previously showed vicious propensities, as the Johnsons propose in brief.

Additionally, in *Kasem*, the owner and person responsible for the day-to-day maintenance of the cattle, including the pregnant cow that escaped its enclosure, both testified that generally a cow, when pregnant or separated from the herd, can become more prone to being easily startled because it is nervous and could panic.

7

Further, they both testified that the circumstances of that day exacerbated the situation because a multitude of persons, including local police, fire department personnel, and some folks on four-wheelers, were present to further upset an already nervous or stressed animal.

Here, there is no evidence of knowledge by the owners that their 4-H hog was dangerous or stressed by escaping its enclosure. Contrarily, Angela Battise testified that the 4-H hog was let out of its enclosure on a regular basis, depending if they were home. Nor is there evidence here of any extenuating circumstances tending to excite or scare the 4-H hog on the day is left in its enclosure.

Additionally, and curiously the only extenuating circumstances present here that may have excited or scared this 4-H hog, would be knowledge of its demise once Johnson employed self-help, immediately after this incident, by shooting and killing the Battises' hog. Johnson's self-help shooting is memorialized in the record with a photograph depicting Johnson giving a "thumbs up" gesture while standing next to this 4-H hog hanging by its hind legs, which picture Johnson then sent to Mr. Battises, and Brett, the Battises' 15-year-old son, who had raised and cared for the 4-H hog, came upon while looking for his hog.

Accordingly, we find *Kasem* clearly distinguishable from the case before us. Here, there is no evidence in the record that this 4-H hog was inherently dangerous due to its size or activities, nor is there any evidence that the 4-H hog was under stress because it was not in its enclosure or because the animal was subject to an unusual situation with a multitude of strangers attempting to corral it.

*III.   Animal Owner Liability under Louisiana Revised Statutes 3:2803*

Additionally, the Johnsons argue that summary judgment is precluded because the Battises failed to show they were free from negligence because the 4-H hog escaped from its enclosure. They argue it is analogous to when cattle escape on to a roadway, and thus the owners of cattle are liable for any damages caused by their animal when the owner negligently permits their animal to escape. We find this argument misguided.

The basis for liability of an owner of cattle for negligently permitting livestock at large is found pursuant to La.R.S. 3:2803, a specific statute dealing with livestock at large upon certain highways. Here, as stated, the Johnsons' personal injury claim of negligence by an animal's owner is governed by La.Civ.Code art. 2321. Thus, the application of La.Civ.Code art. 2321 clearly requires the application of the duty-risk analysis, including the requirement that the owner has actual or constructive knowledge of the danger the animal poses under prevailing jurisprudence, *Pepper*, 864 So.2d 181, and its progeny. We find this argument to be without merit.

## CONCLUSION

After a de novo review of the record, we find there in no evidence in the record that the Johnsons can carry their burden of proof at trial that the Battises knew or should have known of any danger posed by their 4-H hog, and further that the Battises could have but failed to take reasonable measures to prevent the Johnsons' injury, which are necessary elements as to finding the Battises liable, using duty-risk analysis pursuant to La.Civ.Code art. 2321. Accordingly, we find the trial court properly granted the Battises' motion for summary judgment.

9

Plaintiffs/Appellants, Andrew and Rhonda Johnson, appeal the trial court granting the summary judgment motion of Defendants/Appellees, Tony and Angela Battise. We find no error by the trial court in granting the Battise's summary judgment. All costs of these proceedings are assessed to Andrew and Rhonda Johnson.

**AFFIRMED.**